The next case this morning is 523-0516, People v. Metcalfe. Arguing for the appellant is Emily Boyk. Arguing for the appellee is Katrina Kuhn. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Morning. Good morning. Um, Ms. Boyk, you're representing the appellant? That's correct, Your Honor. All right, you may proceed when you're ready. Thank you. Good morning, Your Honor's counsel, and may it please the court. My name is Emily Boyk with the Office of the State Appellate Defender, and I represent Lynell Metcalfe in this appeal. Sorry, ma'am, counsel, I noticed the clock's not moving. Okay. Okay. There we go. Thank you, Ms. McKinney. Uh, given our limited time this morning, I plan to focus my remarks on the second issue raised in the briefs, but I welcome questions on the first and third issues if the court has them. And what is your second issue so that we're all clear? Yes, so the second issue is related to the comments about, uh, Mr. Metcalfe's pretrial incarceration, um, made during, uh, Detective Petrilli's testimony and closing arguments, and the issue is, uh, that, that undermined his presumption of innocence in this case. So over the two-day trial, the jury in this case was informed eight times that Lynell Metcalfe was currently incarcerated pretrial for this offense and that he had remained incarcerated for at least the past five months. The jury was told about Lynell's incarceration during Detective Petrilli's testimony and multiple times in the state's closing arguments. These repeated... And there was, excuse me, Ms. Boyk, there was no objection made to this at the time, right? That is correct, Your Honor, there was no objection. So we're, you're asking for plain error review? Yes, Your Honor, we raise plain error, um, and ineffective assistance of counsel, uh, for not objecting. Okay, thank you. Thank you. These repeated reminders to the jury of Lynell's months-long pretrial incarceration fundamentally undermined his presumption of innocence. Because the evidence in this case was closely balanced, these errors and defense counsel's failure to object to them require this court to grant Lynell Metcalfe a new trial. So during its direct examination of Detective Amy Petrilli, the state elicited testimony that Lynell was, quote, taken into custody at some point and that in August of 2022, Petrilli met with Lynell, quote, at the satellite jail to collect his DNA. Then during closing arguments, the state repeated the fact of Lynell's pretrial incarceration six additional times, including once as a way to invoke the prosecutor's own credibility by stating that the jury should believe that Lynell is guilty because he, quote, was already in jail before the DNA evidence was obtained. These repeated references to his pretrial incarceration substantially prejudiced Lynell. It is well settled that the prosecution may not undermine the defendant's presumption of innocence by listing testimony or making arguments that serve only to inflame the passions and prejudices of the jury. Moreover, verbal references to a defendant's pretrial incarceration undermine the presumption of innocence in the same way that visual references do. Both the United States Supreme Court and the Illinois Supreme Court have held that the presumption of innocence is undermined when the jury is reminded that the defendant is incarcerated. In Estelle v. Williams, the United States Supreme Court held that a defendant cannot be forced to appear before the jury in readily identifiable jail uniform. Similarly, in People v. Boos, the Illinois Supreme Court held that a defendant cannot be placed in restraints in the presence of the jury unless the court finds it necessary. While Estelle and Boos are about visual indicators of the defendant's custody status, the concerns they raise regarding the threat to the presumption of innocence are identical to verbal references. A defendant is no less prejudiced when the jury learns that the defendant is incarcerated with their ears instead of with their eyes. The holdings of Estelle and Boos do not rest on the fact that the reminders of the defendant's pretrial incarceration are visual. Instead, they rest on how that information could be used by the jury. Drawing an arbitrary line between verbal and visual reminders, as the state suggests here, ignores the very concern that motivated the holdings in Estelle and Boos. And the effect of this is clear. Repeatedly telling the jury that the defendant is currently incarcerated, pretrial, impermissibly raises the chance that the jury will convict not merely based on the evidence, but based on the belief that a person who had to be jailed for months was so dangerous that he must be guilty. This logic is indistinguishable from the logic used in Estelle and Boos for jail uniforms and shackling. Furthermore, Petrilli's testimony in this case and the state's closing argument served no legitimate purpose. Petrilli's testimony that she met with Linnell in the satellite jail served no probative value. The state elicited this testimony as part of laying the foundation for the buckle swabs of his DNA to admit that into evidence. However, the fact that Linnell was incarcerated was unnecessary to establish this foundation. Petrilli only needed to say that she met with Linnell to collect his DNA and then identify him in court, that he was the person she met with. She did not have to say that she met with him when he was in jail. And that furthermore, the state's comments in closing argument constituted inappropriate argument. The prosecutor acknowledged to the jury that the DNA evidence implicating Linnell at only three loci was very weak. So as a way to minimize the weakness of this DNA evidence, the prosecutor invoked the integrity of herself and her office by reminding the jury that Linnell was, quote, already in jail when the DNA evidence was acquired. So therefore, the jury shouldn't worry about the DNA evidence. Courts have repeatedly found that the prosecution commits error when it invokes the integrity of its office to support a conviction or puts its own credibility at issue. For example, the Illinois Supreme Court held this way in People v. Caballero. Additionally, the state argues that Linnell invited these comments about his incarceration with his testimony. However, the record does not support this, as I discuss in more detail in my reply brief. And as Your Honor noted, we acknowledge that this error was not raised below. However, we believe this is reviewable under both prongs of the plain error rule, as well as because of ineffective assistance of counsel. For first prong plain error, we argue that the evidence here was closely balanced. As discussed in detail in issue one of my brief, the evidence was closely balanced in this case for the purpose of first prong plain error. We also believe this falls under second prong plain error, as prosecutorial comments affected the fairness of the trial and challenged the integrity of the judicial process. Finally, we argue that counsel was ineffective for failing to object to these comments in this testimony below. So if there are no more questions from the court, because the state's repeated reminders to the jury that Linnell had been jailed for several months were highly prejudicial in this closely balanced case, this court should reverse Linnell's conviction for predatory criminal sexual assault and remand for a new trial. Thank you. Ms. Boyk, I'm also interested in the argument that you want this court to reduce the defendant's charge and remand for resentencing as was done in people versus private, a fifth district case. Yes, Your Honor. So that is an alternative remedy that we asked for, that if the court finds that the evidence is sufficient to meet the charge of aggravated criminal sexual abuse, which is a lesser included offense of predatory criminal sexual assault, we argue that alternatively, this court could remand for resentencing as to that charge. And why would we do that? What is the basis for that argument? So the basis for that argument is related to whether or not this court believes the contact, the contact that was specifically required to be proven for predatory criminal sexual assault. In this case, it was that Linnell's penis made contact with MJ's anus. If the court finds that there was contact with MJ, but not specifically that contact, then this court could find that the elements for aggravated criminal sexual abuse were met, but not the elements for predatory criminal sexual assault. So it's an alternative argument based on the level of evidence that this court may find has been met in this case. Okay. Anything further? No, Your Honor. All right. Justice McHaney, questions?  Justice Welch? Okay. Hearing no questions. Thank you, Ms. Boyk. You will have some time after Ms. Kuhn. Ms. Kuhn for the state. Good morning, Your Honors. Katrina Kuhn for the people of the state of Illinois. May it please the court. May I begin by distinguishing pre-vot, Justice Cates?  Justice, the people versus pre-vot, which counsel claims require, allows a lower, a lesser offense. Here, the defendant was charged with contact. The defendant here was not charged with penetration. In pre-vot, the defendant was charged with penetration and the people only proved touching or contact. And this, what the difference was in pre-vot is that this court, the appellate court rejected the people's argument that the word penetration in the indictment was surplusage. That is why the conviction was reduced in that case. The court determined that pre-vot was charged with penetration, but the people only proved touching or contact and that the people were required to prove penetration in pre-vot. Also, there was no DNA evidence in pre-vot. Pre-vot is entirely distinguishable from this case and there should be no reduction in the defendant's conviction. I'd like to then address people's, the defendant's- Let me just ask you, let me just ask you one question before you move on. The DNA evidence in this case was pretty thin, wasn't it? Your Honor, the people would disagree that there was DNA found in two locations here. There was male DNA found on the victim's anal swab and that DNA was consistent with the defendant's DNA. The defendant could not be excluded from that DNA and the people didn't even have to prove penetration, but that was proof of penetration. There was also DNA found in the outer part of the victim's underwear in 19 locations. Male DNA was found in 19 locations on the outside of the victim's underwear. The jury heard expert testimony that that could only, that that was not, could not be explained away by laundry, by the defendant touching the victim's underwear in a laundry situation and the probability that that was expected, that was traced to the defendant. There was a definitive statistical probability that that was defendant's DNA. Therefore, the DNA was very strong in this case. In addition to the DNA, there was a sexual assault examination that showed damaging contact to the victim's anus. There was tenderness or abrasions or swelling or redness. In addition to that, we have the testimony of the victim and the testimony of her mother. That all goes to my closely balanced argument and to the reasonable doubt argument. And if I could address the second argument, which is the references to defendant's jailed status, defendant, it is the defendant's burden here. The defendant has not met his burden of establishing either prong of plain error or ineffective account, inefficiency of counsel. First, as to detractive Petrilli's testimony, her testimony was given, was a brief and passing verbal reference given for the valid purpose of the, and I believe that was for showing the course of conduct surrounding the defendant's arrest. The defendant had fled the house immediately after being discovered by the mother, laying on top of the victim, and the defendant fled and did not return. It was allowable to explain to the jury that the defendant was arrested. He was then, you know, it showed the course of conduct surrounding the defendant's arrest and all the detractive Petrilli was asked where she met with the defendant. And she said she met with the defendant at the satellite jail in order to get his DNA. Excuse me, pardon me, your honor. That was a brief, as I said, that was a brief verbal reference. The remaining references to defendant's jail status were made in the people's closing argument. That argument had a permissible purpose. It was commenting on the credibility of the defendant's version of events. The prosecutor could counter defendant's choice to testify. Defendant chose to testify and he tried to explain that his absence from the house was, and he tried to explain the fact that he did not have any contact with the victim or her mother because his family members were making threats against him. The prosecutor could comment on the credibility of that testimony and say that defendant was in jail and therefore defendant believed that he would be in any danger of harm from any family members. The defense council then confirmed that line of argument in the defendant's counsel's closing argument saying that defendant had been threatened. So my opponent is focusing on two paragraphs of argument, if that, in a closing argument that stretches for 12 pages of the record. The people argue that this was permissible argument and that it should be viewed in the context of the entire closing argument and not in isolation. The people also strongly assert that there is no second pronged plain error here or first pronged plain error or ineffective assistance. The cases that defendant is relying upon for second pronged plain error are structural errors that render a criminal trial unfair or render the trial an unreliable means of determining guilt or innocence. Here there was no jail clothing. There was no shackling. None of those cases apply. The people did not refer to any prior criminal activity of the defendant. Defendant is relying on cases such as Hays and Slaughter in their brief and in those cases, the prosecution referred to prior convictions of the defendant. In Hays, the prosecutor said send the defendant back to jail. In Slaughter, the prosecutor referred to prior convictions and the length of the defendant's prior sentence in arguing that while the defendant should go back to jail for this is not what occurred here. There was no reference to prior convictions. There was no reference. There was again, there were no visual reminders of jailed status. And here again, the defendant also cites to Wilkes. Wilkes is distinguishable in this case. There was no error found in the shackling in Wilkes because the defendant had escaped. And even so, there was a harmless error analysis done and there was no harmless error. And so, the people argue that even in those cases, there can be found no error. There are cases where shackling, et cetera, have been found to not constitute second-pronged plane error. In this case, there is no second-pronged plane error. And turning to first-pronged plane error, the evidence was not closely balanced here. As the people have stated, there has been DNA evidence, a medical examination, testimony of two witnesses that the victim was unclosed and the defendant was laying on top of the victim unclothed with his shorts down. Again, there was DNA evidence. The defendant made no explanation to explain this to the mother before he fled. He actually apologized and said he was sorry to the mother before he fled. The trial court sentencing even referred to this evidence as overwhelming. Even if there was no corroborating evidence, which there is here, the lack of corroborating evidence does not even render a case closely balanced. Here, there is corroborating evidence, as I have stated. And again, if there is no first-pronged plane error, there is no ineffective assistance of counsel. That is the same. The closely balanced prong is the same as the prejudice prong of Strickland. If you cannot prove one, you cannot prove the other. And here, there is no reasonable probability that the defendant would not have been found guilty if counsel had objected to the defendant's, to the detective's response into the prosecution's closing argument, which they failed to do. This does not constitute first-pronged plane error or second-pronged plane error or ineffective assistance of counsel. The people also wish to note that the third issue raised by the defendant has been addressed in the Illinois Supreme Court's opinion in People v. Johanson, which the people have been granted leave to cite and which is not. Your Honors, may I answer any other questions? Justice McKinney? No questions. Justice Welsh? No questions. Okay. Thank you, Ms. Kuhn, for your arguments. Ms. Boyk, rebuttal? Thank you, Your Honors. Two points in response. First, regarding the state's discussion of the prosecution using closing argument to respond to Linnell's testimony. As the state mentioned, Linnell testified that the reason he hadn't contacted his son, who he shares with the victim's mother, since this incident occurred was because he stated that his family members had received threatening phone calls stating that they were going to kill him and that he, therefore, testified that he feared for his safety. And the state in closing arguments argued that this testimony about Linnell receiving these threats was not credible. The state provided several reasons why this was not credible. The state argued that, most importantly, these alleged threats were never reported to the police. Also, that Linnell never made any attempts to go back and get any of his stuff, which shows that he was not returning for other reasons, and also that no one even knew where he was for an extended period of time. It was only after making all of these arguments that the state then said that even if these threats did happen, it's still unbelievable because he's in jail and no one who made these threats could have even heard him in jail. So it's true that the state was permitted to respond to Linnell's testimony, but that response did not require mentioning that he was in jail, as the state already argued three other reasons why this testimony was not credible. So the references to his pretrial incarceration serve no additional purpose. Additionally, Your Honor, regarding the DNA evidence in this case and the way that it was used, as Your Honor noted, the DNA evidence that specifically linked, proved contact with the victim's anus, which is what the charge was in this case, could only include Linnell at three loci. That's about one in 70. It's extremely low probability. The analyst testified that if it had been at even one less loci, that he would have been excluded altogether. This is weak evidence, and the prosecution, again, was aware that this was weak evidence because in their closing argument, they told the jury not to worry about the DNA evidence because he was already in jail when the state got this DNA evidence. So don't worry about it. We know he's guilty because we wouldn't have put him in jail if we didn't think he was guilty. That was the thrust of that argument. And so I think that only underscores how this information was being used by the state, and not just to respond to Linnell, but to bolster their own credibility and to point out that the state also recognized that this DNA evidence was weak. So given all of that, Your Honor, again, we would ask that this court grant Linnell Metcalf a new trial based on these errors. Thank you. Ms. Boyk, what if you consider the underwear evidence that the state references as well as the physical exam of the anus? Yes, Your Honor. So regarding the underwear, so the state is correct, the outside of the underwear, Linnell's DNA, he could not be excluded at 19 locations. And it's true that the analyst did testify that it is unlikely that that amount of DNA would be present after having gone through the laundry. However, Linnell did testify at trial that he helps fold the children's laundry. So the analyst's testimony that this DNA would not survive going through the laundry doesn't negate Linnell's testimony that after it had already been through the laundry, that he could have touched it while folding it. I will also note that another male DNA or another person's DNA was also found on the outside of the underwear in addition to the victim. So Linnell's DNA was not the only DNA found on the outside of the underwear, which also kind of undermines the probative value of that. Regarding the exam, again, the state is correct that the nurse testified that she found T-bars, tenderness, bruising, abrasion, swelling. She could not say which of those she actually observed. She did not remember. It did not indicate those in her notes. So it is true that the nurse did find T-bars. But again, it's the state's burden to prove contact here and specifically that Linnell made contact with his penis. And without more of that, T-bars information does not by itself rise to that level of evidence. It seemed to me that the nurse who was called couldn't decipher her own notes. Yes, that seemed to be correct, that the nurse had written down that she found T-bars, but she could not remember which of those that meant. And that's, you know, T-bars are several different things, could be various levels from tenderness to bruising to abrasions. So it's not clear from the nurse's testimony the level of, you know, harm or injury that the victim had in this case. Okay. Justice McKinney, questions? Questions. Justice Welch, questions? Questions. Okay. That concludes the arguments today. We will take this matter under advisement and issue an order in due course. Thank you both for your participation today. Have a great day. Thank you.